UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Charles R. Estes, et al.

     v.                                  Civil No. 19-cv-822-LM
                                             Opinion No. 2020 DNH 159 P

ECMC Group, Inc.

**O R D E R**

Pro se plaintiffs Charles R. Estes (d/b/a OEM-Tech) and Alia G. Estes allege that defendant Education Credit Management Corporation ("ECMC") violated federal and state laws in its attempts to collect Alia Estes's student loan debt. ECMC brings four counterclaims against the Estes. Each side moves to dismiss the opposing side's claims under Federal Rule of Civil Procedure 12(b)(6). For the reasons explained below, the court grants in part, and denies in part, the motions to dismiss.

**STANDARD OF REVIEW**

Under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71, 75 (1st Cir. 2014) (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

On a motion to dismiss, the court ordinarily must not consider any documents not attached to the complaint or not expressly incorporated therein. See Ironshore Specialty Ins. Co. v. United States, 871 F.3d 131, 135 (1st Cir. 2017). There are, however, narrow exceptions to this rule allowing the court to consider documents the authenticity of which is not disputed by the parties, official public records, documents central to plaintiffs' claims, or documents sufficiently referred to in the complaint. Id.

## DISCUSSION

The court first considers ECMC's motion to dismiss the plaintiffs' four claims and then turns to plaintiffs' motion to dismiss ECMC's four counterclaims.

I.   ECMC's Motion to Dismiss

The facts as alleged by the Estes are summarized below.

As of 2001, Alia[1] (then Alia Maxwell) had several student loans. That year, she  applied for a federal consolidation loan from Washington Mutual Bank using an application form from Collegiate Funding Services ("Collegiate"). The application was approved and SLC Student Loan Trust ("SLC") funded the $21,378 loan as the "Guarantor of Record." Alia began repaying the loan in April 2001. In 2006, she

---

[1] The court refers to plaintiffs individually by their first names.

married Charles Estes and changed her name from Alia Maxwell to Alia Estes.[2]  In 2009, the Estes moved to New Hampshire.

In July 2011, the loan was purchased by another lender, Sallie Mae Financial Services ("Sallie Mae"). Sallie Mae processed the loan until September 2012, at which point Sallie Mae became Navient Financial Services ("Navient"), and Navient started processing the loan payments. In October 2012, the Estes contacted Navient requesting a forbearance due to a change of financial circumstance. The Estes also informed Navient that recent loan statements had erroneously included late or accrued fees. Navient agreed to clear the fees from the account and granted Alia a six-month forbearance with reduced loan payments, after which payments were to return to the normal amount.

Although the forbearance was supposed to last only six months, the Estes made reduced loan payments from November 2012 to December 2015.[3]  The Estes called Navient many times asking Navient to release them from the forbearance and restore them to regular loan payments. The Estes also asked Navient to account for "unexplained fees" that appeared on the loan statements, and to send them all loan documents related to the transfer from SLC and a payment transaction history. Doc. no. 1-1 at ¶ 2. Navient rejected plaintiffs' requests.

---

[2] Charles owns and operates OEM-Tech, Co.

[3] The reason the Estes continued making reduced payments beyond the agreed-upon six-month forebearance—or whether they were precluded from making payments in the pre-forebearance amount—is unclear from the complaint.

In January 2016, the Estes received a letter from ECMC[4] claiming Alia was more than six months behind in payments and that she had to act quickly to avoid default. The letter offered the possibility of zero-dollar loan payments if the Estes qualified, and instructed the Estes to contact ECMC or Navient. The Estes had never heard of ECMC and knew they were not behind in their loan payments. They called Navient and were told that Navient "had no record of ECMC ever being a party to the loan." Id. at ¶ 7. Navient explained ECMC was a "competitor" who used letters like the one the Estes received to "deceptively poach" potential customers. Id.

The Estes claim that, as of April 22, 2016, the loan was in "good standing" and that they had made 171 consecutive payments totaling $29,544.25. Id. at ¶ 2. The complaint states both that Navient had "written off" Alia's loan and that the loan balance was $13,626.10.[5] Id. at ¶ 22.

The Estes did not hear from ECMC again until July 2017 when they received a "Notice of Default" letter from ECMC. Id. at ¶ 8. The letter stated that because Alia had failed to meet her student loan repayment obligation, ECMC—as guarantor of Alia's loan—had paid a default claim to the lender and taken assignment of Alia's loan. The letter did not contain verifiable information about Alia's loan. Plaintiffs—having been previously told that ECMC was Navient's

---

[4] Although it appears from the allegations in the complaint that the loan was taken out in only Alia's name, the complaint states that Navient and ECMC were communicating with both Alia and Charles.

[5] The complaint does not address why Navient would have "written off" a loan that was purportedly in good standing.

competitor, and knowing that ECMC was not the loan's original guarantor—decided to investigate further before responding to ECMC. Plaintiffs later learned ECMC had reported Alia's account to collections on July 6 with a stated balance of $15,325.

ECMC did not contact plaintiffs again until early October 2017, when the Estes received a notice entitled "Notification of Report to Consumer Reporting Agencies." Id. at ¶ 11. The notice stated ECMC had reported the default to national reporting agencies because the Estes had not paid the full balance within 60 days of receiving the default notice. By this point, the loan balance had purportedly increased to $19,410. ECMC had not given Alia an option to pay the past due amount or clear the default status prior to adding $4100 in fees and reporting the account to collections. In late October, various credt card processing companies lowered plaintiffs' credit limits, and Alia's  credit score was subsequently reduced from 740 to 602. These reductions negatively affected Charles's business, OEM-Tech, Co. In late October 2017, plaintiffs wrote ECMC a letter disputing the validity of ECMC's claim and requesting an investigation into the validity of the debt.

In November, ECMC sent plaintiffs several documents, one of which stated "ECMC-CA" was the "Original Guarantor" of Alia's loan. Id. at ¶ 14. The Estes, knowing ECMC-CA was not the loan's original guarantor, believed ECMC had fabricated the documents. The Estes wrote ECMC disputing the validity of ECMC's claim and asking ECMC to prove the stated balance or make a reasonable offer to finalize the account.

In December 2017 and September 2018, ECMC sent plaintiffs letters stating ECMC held Alia's defaulted student loan because ECMC had become the "guaranty agency" for Alia's account in 2010. Id. at ¶¶ 15-16. In June 2019, ECMC seized plaintiffs' 2018 tax refund.

On June 18 2019, the Estes brought this action in state court asserting four claims against ECMC: (I) violation of New Hampshire's Unfair, Deceptive or Unreasonable Collection Practices Act, RSA 358-C:3 ("UDUCPA"); (II) violation of the Federal Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), and regulations enacted under the Higher Education Act, 15 U.S.C. § 1070 et seq. ("HEA"); (III) violation of New Hampshire's Criminal Fraud statute, RSA 638:1-29; and (IV) an additional violation of FDCPA, 15 U.S.C. § 1692 et seq.  In August 2019, ECMC removed the case to this court invoking the court's federal question and supplemental jurisdiction.

ECMC moves to dismiss each of plaintiffs' four claims. Because a discussion of the federal laws implicated in Count II will lay a foundation for the court's discussion of Count I, the court switches the order and begins with ECMC's arguments concerning Count II.

### A. Count II: Violation of FDCPA and HEA Regulations

Plaintiffs contend ECMC violated FDCPA and regulations enacted under HEA when it resurrected a debt that Navient had written off, failed to follow "due diligence" guidelines, "deceived" the United States Department of Education

("DOE") into certifying the debt as a default, and then "deceived" the United States Treasury into releasing their 2018 federal tax refund to ECMC.[6]  ECMC moves to dismiss, arguing that plaintiffs cannot bring a claim under HEA because the Act does not include a private right of action. ECMC contends with respect to FDCPA that the Estes cannot recover under that Act because: (1) ECMC is not a "debt collector," therefore FDCPA does not apply; and (2) the FDCPA claim is barred by a one-year statute of limitations.

    1.  <u>Violation of HEA Regulations</u>

The Estes allege that ECMC violated HEA regulations, <u>see</u> 34 C.F.R. §§ 682.206-.208 and 682.411, when it took actions culminating in ECMC's seizure of their 2018 tax refund.  ECMC moves to dismiss, arguing HEA does not include a private right of action.

HEA does not expressly provide for a private cause of action but provides for suit "by or against the Secretary" of Education. 20 U.S.C. § 1082(a)(2). Although the First Circuit has not explicitly addressed whether a private right of action exists under HEA, "nearly every court to consider the issue . . . has determined that there is no express or implied private right of action to enforce any of the HEA's provisions." <u>McCulloch v. PNC Bank Inc.</u>, 298 F.3d 1217, 1221 (11th Cir. 2002)

---

[6] On the first page of their complaint, the Estes state they are bringing Count II under both FDCPA and HEA. However, in ¶ 25, where the Estes set forth their "second cause of action," the Estes only cite HEA and regulations enacted under that Act and do not reference FDCPA. ECMC's motion to dismiss treats this count as if it were brought under both Acts. For purposes of this order, the court presumes plaintiffs assert both FDCPA and HEA violations in Count II.

(collecting cases); see also Sanon v. Dep't of Higher Educ., 453 F. App'x 28, 30 (2d Cir. 2011); Thomas M. Cooley Law Sch. v. Am. Bar Ass'n, 459 F.3d 705, 710 (6th Cir. 2006); College Loan Corp. v. SLM Corp., 396 F.3d 588, 598 (4th Cir. 2005); Slovinec v. DePaul Univ., 332 F.3d 1068, 1069 (7th Cir. 2003) (per curiam); Labickas v. Ark. State Univ., 78 F.3d 333, 334 (8th Cir. 1996) (per curiam); Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995); L'ggrke v. Benkula, 966 F.2d 1346, 1348 (10th Cir. 1992).

In light of the overwhelming weight of authority, the court concludes that there is no private right of action to enforce HEA regulations. Accordingly, to the extent Count II is premised on the HEA, it is dismissed.

2. Violation of FDCPA

In Count II, the Estes also allege that, in the course of administratively seizing plaintiffs' 2018 tax return, ECMC violated FDCPA.  FDCPA was enacted "to eliminate abusive debt collection practices" by "debt collectors." 15 U.S.C. § 1692(e). For example, under FDCPA, a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, and a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt," 15 U.S.C. § 1692f. An aggrieved plaintiff may recover actual or statutory damages under FDCPA.  See 15 U.S.C. 1692k(a)(1)-(2).

To recover under FDCPA, the Estes must show that: "(1) they have been the object of collection activity arising from a consumer debt; (2) the defendant

attempting to collect the debt qualifies as a 'debt collector' under the Act; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the [Act]." Moore v. Mortg. Elec. Registration Sys., Inc., 848 F. Supp. 2d 107, 124 (D.N.H. 2012) (internal quotation marks omitted).

Only element two is relevant here.  ECMC argues that plaintiffs cannot prevail under FDCPA because ECMC is not a "debt collector." FDCPA defines "debt collector" as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6). Under this definition, an entity has "to attempt to collect debts owed <u>another</u> before [it] can ever qualify as a debt collector." Henson v. Santander Consumer USA Inc., 137 S. Ct. 1718, 1724 (2017). If an entity purchases debt that is already in default, and then seeks to collect the debt for itself, that entity is not a debt collector under FDCPA. <u>See</u> <u>id.</u> The definition of debt collector includes several exemptions, including one for any "officer or employee of a creditor." 15 U.S.C. § 1692a(6)(A). FDCPA separately defines "creditor" as one "who offers or extends credit creating a debt or to whom a debt is owed." <u>Id.</u> at (4). The definition of debt collector also excludes "any person collecting or attempting to collect any debt owed . . . another to the extent such activity is incidental to a bona fide fiduciary obligation." <u>Id.</u> at (6)(F)(i).

ECMC asserts that it is a "guaranty agency" under HEA and is therefore not a debt collector under FDCPA. "Guaranty agency" is a term of art under HEA. <u>See</u>

Rowe v. Educ. Credit Mgmt. Corp., 559 F.3d 1028, 1030-31 (9th Cir. 2009)

(explaining history of HEA and the role of "guaranty agencies" in administering the

Federal Family Education Loan Program). A guaranty agency acts as "an

intermediary between the United States and the lender of a student loan." Id. at

1030.  If a borrower defaults on a loan and the lender is unable to collect the debt

despite complying with due diligence requirements, the lender files a claim with the

guaranty agency. See 34 C.F.R. §§ 682.411-.412. The guaranty agency then pays the

lender the unpaid balance of the defaulted loan and the lender assigns the loan to

the guaranty agency. See id. at § 682.410. The guaranty agency can recover most if

not all its losses from the DOE so long as it follows applicable HEA regulations. See

id.; 20 U.S.C. § 1078(c).

Guaranty agencies act as fiduciaries of the DOE when they operate under

HEA regulations. See, e.g., Bennett v. Premiere Credit of N. Am., LLC, 504 F. App'x

872, 878 (11th Cir. 2013) (per curiam); Rowe, 559 F.3d at 1034. Accordingly, many

courts have held that guaranty agencies are not "debt collectors" under FDCPA

because their collection activity is "incidental to a bona fide fiduciary obligation," 15

U.S.C. § 1692a(6)(F)(i). See, e.g., Bennett, 504 F. App'x at 878; Cadiz v. Educ. Credit

Mgmt. Corp., No. 17-CV-06362, 2019 WL 4254484, at *4 (N.D. Ill. Feb. 21, 2019);

Rowe v. Educ. Credit Mgmt. Corp., 730 F. Supp. 2d 1285, 1289 (D. Or. 2010).

Resolving whether ECMC's relationship to Alia's loan is that of a guaranty

agency or a debt collector requires a factual determination. ECMC argues that the

court should make this determination by taking judicial notice that other district

10

courts regard ECMC as a guaranty agency. It is true that other courts have stated that ECMC is "at least generally speaking" a guaranty agency. Rowe, 559 F.3d at 1032. Here, however, the relevant question is not whether, "generally speaking," ECMC is a guaranty agency,  but whether, in this particular case, ECMC was acting as a guaranty agency under HEA. See id. The court cannot resolve this factual question by relying on decisions other courts have reached on the basis of different factual records.

ECMC also argues that the court can determine that ECMC is the guaranty agency for Alia's loan based in part on a promissory note it attached to its motion to dismiss. See doc. no. 23-2. ECMC argues this document establishes that CSAC was the original guaranty agency for Alia's loan. ECMC also states that, in 2010, CSAC's loan portfolio was transferred to ECMC, which means that ECMC is the guaranty agency for Alia's loan.

When deciding a 12(b)(6) motion, a trial court can review a document other than the complaint if the document's authenticity is not in dispute and the factual allegations in the complaint depend on the document. See Ironshore, 871 F.3d at 135. Plaintiffs allege that Alia applied for a loan in 2001 using an "application form" from Collegiate, doc. no. 1-1 at 20, and they do not dispute that this form is the same document that ECMC attached to its motion to dismiss as a "promissory note," see doc. no. 23-2. Although the Estes do not agree that the document constitutes a "promissory note," they do not dispute the document's authenticity.

The court may, therefore, consider the content of the application form/promissory note in deciding ECMC's motion to dismiss.[7]

The court has reviewed the document. Contrary to ECMC's assertion, it does not establish that CSAC was the loan's original guarantor. Rather, the name in the "Guarantor, Lender or Program Identification" box is "Collegiate Funding Services, LLC" and the name CSAC does not appear on the application form.[8] Id. Even if CSAC did appear in the document as the loan's guarantor, the legible portions of this document signed in 2001 do not indicate that the loan was transferred to ECMC in 2010.

Ultimately, whether ECMC qualifies as a guaranty agency under HEA, or a debt collector under FDCPA, turns on factual questions that will need to be resolved in discovery. As this is a motion to dismiss, the court construes the facts as alleged by plaintiffs as true. At this early stage, plaintiffs' FDCPA claim survives ECMC's argument that it is not a debt collector under FDCPA. After discovery, the factual record regarding ECMC's relationship to Alia's loan will be clearer, and the parties may revisit whether ECMC is a debt collector at summary judgment.

---

[7] ECMC attached additional documents to its motion to dismiss to establish it is the guaranty agency. However, plaintiffs challenge the authenticity of those documents and characterize them as fabricated and fraudulent. Thus, the court does not consider them.

[8] The court cannot read all of the small print on this document. However, ECMC does not cite, and the court has not found, any portion of the loan application/promissory note stating that CSAC had any legal relationship to Alia's loan in 2001.

3.  <u>Statute of Limitations</u>

ECMC also moves to dismiss plaintiffs' FDCPA claim on the grounds that it is barred by a one-year statute of limitations.  <u>See</u> 15 U.S.C. § 1692k(d) (stating an action may be brought under FDCPA "within one year from the date on which the violation occurs"). However, some of the ECMC actions that the Estes cite as FDCPA violations, for example ECMC's administrative seizure of the Estes' 2018 tax return, appear to have taken place less than a year before the Estes filed suit. Accordingly, a one-year statute of limitations would not bar those portions of plaintiffs' claim. Moreover, the United States Supreme Court recently recognized that although "the statute of limitations in § 1692k(d) begins to run on the date on which the alleged FDCPA violation occurs," Rotkiske v. Klemm, 140 S. Ct. 355, 357 (2019), an "equitable, fraud-specific discovery rule" may delay "the commencement of the statute of limitations in fraud actions," <u>id.</u> at 361 (citing Merck & Co. v. Reynolds, 559 U.S. 633, 644 (2010)).

Plaintiffs' allegations against ECMC sound in fraud. Drawing reasonable inferences in plaintiffs' favor, the court cannot conclude at this time that any portion of plaintiffs' FDCPA claim is barred by the one-year statute of limitations. After discovery, and after the parties have had the opportunity to brief the applicability of an equitable, fraud-specific discovery rule, ECMC may reassert its statute of limitations argument.

In sum, the court grants ECMC's motion to dismiss Count II to the extent the claim was brought under HEA but denies ECMC's motion to dismiss Count II to the extent it was brought under FDCPA.

B.  <u>Count I: New Hampshire's UDUCPA</u>

In Count I, the Estes allege that ECMC violated New Hampshire's UDUCPA when ECMC falsified documents, engaged in fraud, and failed to investigate their claims. ECMC moves to dismiss, arguing in the alternative that: (1) plaintiffs' state law UDUCPA claim is expressly and impliedly preempted by the federal HEA; and (2) plaintiffs have failed to state a claim under UDUCPA.

1.  <u>Preemption</u>

UDUCPA "is the state-law analog to the federal FDCPA." Dionne v. Fed. Nat'l Mortg. Ass'n, No. 15-CV-056-LM, 2016 WL 3264344, at *9 (D.N.H. June 14, 2016) (internal quotation marks omitted).  It allows a debtor to recover damages for "unfair, deceptive or unreasonable" debt collection practices by a "debt collector." RSA 358-C:2; see RSA 358-C:4; see also Dionne, 2016 WL 3264344, at *9. ECMC argues that HEA both expressly and impliedly preempts plaintiffs' UDUCPA claim.

The Supremacy Clause provides that the Constitution, federal statutes, and treaties constitute "the supreme Law of the Land." U.S. Const. art. VI, cl. 2. The Clause "provides a rule of decision for determining whether federal or state law applies in a particular situation." Kansas v. Garcia, 140 S. Ct. 791, 801 (2020) (internal quotation marks omitted). The United States Supreme Court has

identified three different types of preemption: express, conflict, and field. Murphy v. Nat'l Collegiate Athletic Ass'n, 138 S. Ct. 1461, 1480 (2018) (internal quotation marks omitted). "[A]ll of them work in the same way: Congress enacts a law that imposes restrictions or confers rights on private actors; a state law confers rights or imposes restrictions that conflict with the federal law; and therefore the federal law takes precedence and the state law is preempted." Id.

Express preemption occurs where Congress enacts a statute "containing an express preemption provision." Arizona v. United States, 567 U.S. 387, 399 (2012); see also Pac. Gas & Elec. Co. v. State Energy Res. Conservation and Dev. Comm'n, 461 U.S. 190, 203 (1983) ("It is well-established that within Constitutional limits Congress may preempt state authority by so stating in express terms."). Field preemption occurs when federal law occupies a field of regulation "so comprehensively that it has left no room for supplementary state legislation." R.J. Reynolds Tobacco Co. v. Durham County, 479 U.S. 130, 140 (1986). Finally, conflict preemption arises where state law actually conflicts with federal law, for example "where it is impossible for a private party to comply with both state and federal requirements," or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." English v. Gen. Elec. Co., 496 U.S. 72, 79 (1990) (citation and internal quotation marks omitted).

ECMC relies on theories of express and conflict preemption. With respect to express preemption, ECMC argues HEA expressly preempts UDUCPA in this case because a regulation promulgated under HEA states: "The provisions of paragraphs

(b)(2), (5), and (6) of this section preempt any State law, including State statutes, regulations, or rules, that would conflict with or hinder satisfaction of the requirements of these provisions." 34 C.F.R. § 682.410(b)(8). However, each of the cited provisions regulates the behavior of guaranty agencies; the regulation does not speak to the behavior of debt collectors.  For the reasons already stated, the court has yet to conclude ECMC was acting as the "guaranty agency" for Alia's loan. Therefore, even assuming HEA expressly preempts UDUCPA as it pertains to guaranty agencies, an issue upon which the court need not rule at this time, the court does not conclude HEA expressly preempts plaintiffs' UDUCPA claim.

ECMC also argues HEA impliedly preempts UDUCPA under a conflict preemption theory. This theory likewise relies on a finding that ECMC engaged in collection efforts as a "guaranty agency" under HEA. It therefore fails for the same reason ECMC's express preemption argument fails. After discovery, the factual record will be clearer, and the parties may raise any remaining preemption issues at summary judgment.

### 2.  Failure to State a UDUCPA Claim

ECMC next argues the court should dismiss plaintiffs' UDUCPA claim because the Estes have not sufficiently alleged any of the three elements of a UDUCPA claim. The first element of a UDUCPA claim requires a plaintiff to be the object of "collection activity." Dionne, 2016 WL 3264344, at *9 (internal quotation marks omitted). ECMC argues that a portion of plaintiffs' allegations concerns conduct that does not qualify as "collection activity" under UDUCPA. Specifically,

ECMC points to the allegations concerning ECMC's assessment of penalties. See
DeSteph v. Conn. Dep't of Banking, No. 09-11681-MWV, 2009 Bankr. LEXIS 4006,
at *10 (Bankr. D.N.H. Dec. 2, 2009) (noting that "assessing penalties is wholly
different than collecting a debt"). However, as ECMC acknowledges, plaintiffs'
UDUCPA claim is not premised solely on ECMC's assessment of expenses and
penalties; the Estes allege ECMC also violated UDUCPA by seizing their tax
refund, threatening to garnish Alia's wages, and creating fraudulent documents.
ECMC concedes these additional allegations could constitute collection activity
under UDUCPA. Therefore, at this stage, the court concludes plaintiffs have
sufficiently alleged this element.

The second element of a UDUCPA claim requires a defendant to be a "debt
collector." Dionne, 2016 WL 3264344, at *9. UDUCPA defines a "debt collector," in
part, as an entity "who by any direct or indirect action, conduct or practice enforces
or attempts to enforce an obligation that is owed or due, or alleged to be owed or
due, by a consumer as a result of a consumer credit transaction." RSA § 358-C:1,
VIII(a). ECMC argues that it is not a "debt collector" under FDCPA and so cannot
be a "debt collector" under UDUCPA. However, UDUCPA's definition of "debt
collector" is "substantially broader" than FDCPA's. Doucette v. GE Capital Retail
Bank, No. 14-CV-012-LM, 2014 WL 4562758, at *3 (D.N.H. Sept. 15, 2014). Since
the Estes have plausibly alleged that ECMC is a "debt collector" under FDCPA, it
follows that their allegations under UDUCPA are sufficient.

Turning to the third element, ECMC argues the Estes have failed to adequately plead that ECMC committed any acts prohibited by UDUCPA. Plaintiffs' complaint does not specify which section of UDUCPA was violated. But the Estes allege ECMC purposely misrepresented its relationship to Alia's loan, made false statements about Alia's payment history, told the Estes the loan was in default when no formal default proceeding had occurred, added unsubstantiated fees, refused to communicate with them, fabricated documents, and used the fraudulent documents to seize plaintiffs' tax return. These alleged acts implicate several provisions of UDUCPA. See RSA 358-C:3 I(d), IV(d), VII, VIII, X. Accepting plaintiffs' factual allegations as true and drawing reasonable inferences in their favor, the court easily concludes that the Estes have plausibly alleged ECMC engaged in conduct that violates UDUCPA. ECMC's motion to dismiss Count I is denied.[9]

---

[9] ECMC further argues that Count I should be dismissed as to Charles because (1) Charles' alleged damages are outside of UDUCPA's protection and (2) RSA 358-C:4 indicates that an aggrieved debtor may bring a suit—not their spouse. As to ECMC's first contention, whether Charles has suffered compensable damages is not an issue that may be resolved at this stage of the litigation. Charles has pled damages under UDUCPA and the court is required to assume the truth of the plaintiffs' allegations. See In re Fiddler Gonzalez & Rodriguez, P.S.C., 415 F. Supp. 3d 297, 302 (D.P.R. 2019). As to their second contention, UDUCPA contemplates that an an action may be brought "on behalf of an individual debtor." RSA 358-C:4, I(a). Thus, ECMC's contention is misplaced.

C.  Count III: Violation of New Hampshire's Criminal Fraud Statute

In Count III, the Estes allege defendants violated New Hampshire's criminal fraud statute, RSA 638:1-29, by fabricating documents and presenting a loan application from an unrelated company as a promissory note to ECMC.[10] Defendants move to dismiss, arguing that New Hampshire's criminal fraud statute does not include a private cause of action.

If a New Hampshire criminal statute does not have an express provision allowing for a private right of action, the purpose and language of the statute must compel the inference that the legislature intended violation of the statute to give rise to civil liability. See Marquay v. Eno, 139 N.H. 708, 713 (1995). Here, RSA 638:1-29 does not expressly allow for a private right of action and the language of the statute does not imply that the legislature intended for violation of the statute to give rise to civil liability. Cf. Rikos v. Procter & Gamble Co., No. 1:11-CV-226, 2013 WL 360330, at *3 (S.D. Ohio Jan. 30, 2013) (finding no private right of action under  RSA 638:6, the Deceptive Business Practices section of New Hampshire's criminal fraud statute). Finally, the legislature has enacted other statutes that

---

[10]  The first page of plaintiffs' complaint and ¶ 27 of Count III cite RSA 638:1-29 as the legal basis for this count. However, in ¶ 26 of Count III, the Estes also cite HEA and 15 U.S.C. § 1681(a), the "Congressional Findings and Statement of Purpose" section of the Fair Credit Reporting Act ("FCRA"). ECMC proceeds in its motion to dismiss as if Count III is brought under RSA 638:1-29. The Estes do not address this discrepancy in their objection. With respect to HEA, there is no private cause of action under that statute. See supra at 9. With respect to FCRA, the Estes have failed to identify any section of that statute that ECMC purportedly violated. The court therefore limits its analysis of Count III to whether it states a claim under RSA 638:1-29.

allow civil plaintiffs to bring actions for damages and equitable relief against those

who engage in unfair or deceptive conduct in the course of trade and commerce, see

RSA 358-A:2, -A:10, or debt collectors who attempt to collect debts in an "unfair,

deceptive or unreasonable manner," RSA 358-C:2, -C:4. For these reasons, the court

concludes that there is no private right of action under RSA 638:1-29. Count III is

therefore dismissed.

###### D.  Count IV: Violation of FDCPA[11]

In Count IV, the Estes allege ECMC violated 15 U.S.C. § 1692f(6)[12] when it

seized plaintiffs' $2,970 tax return.[13] That provision prohibits a "debt collector" from

using "unfair or unconscionable means to collect or attempt to collect any debt," and

defines the following conduct to be a violation:

> (6) Taking or threatening to take any nonjudicial action to effect
> dispossession or disablement of property if--
>     (A) there is no present right to possession of the property
>     claimed as collateral through an enforceable security interest;

---

[11] The first page of plaintiffs' complaint cites both FDCPA and HEA as the
legal basis for this count. However, in ¶ 28 of Count IV, the Estes only cite FDCPA.
ECMC proceeds in its motion to dismiss as if plaintiffs bring this only under HEA.
The Estes do not address this discrepancy in their objection. With respect to HEA,
the court has held, supra at 9, that there is no private cause of action under that
statute. The court therefore limits its analysis of Count IV to whether it states a
claim under FDCPA.

[12] Plaintiffs' complaint cites 15 USC § 1692a(6).  This appears to be a
scrivener's error as the language the Estes quote and rely on is from 15 U.S.C. §
1692f(6).

[13] The conduct at issue in this claim, ECMC's seizure of plaintiffs' 2018 tax
return, appears to be the same conduct at issue in Count II. ECMC's motion to
dismiss does not argue Count IV is duplicative of Count II.

> (B) there is no present intention to take possession of the
> property; or
> (C) the property is exempt by law from such dispossession or
> disablement.

15 U.S.C. § 1692f(6). ECMC moves to dismiss on the grounds that this statute has

no private right of action. However, FDCPA's private-enforcement provision,

§ 1692k, authorizes any aggrieved person to recover damages from "any debt

collector who fails to comply with any provision" of FDCPA. 15 U.S.C. § 1692k(a).

Therefore, Count IV may proceed under FDCPA.


II.     <u>Estes' Motion to Dismiss</u>

ECMC asserts four counterclaims against the Estes. Three of the

counterclaims are brought against Alia: Breach of Contract (Count I); Quantum

Meruit (Count II); and Unjust Enrichment (Count III). ECMC asserts the fourth

counterclaim against both plaintiffs under the New Hampshire Consumer

Protection Act, RSA 358-A ("CPA") (Count IV). Before the court considers each

counterclaim in turn, the court briefly recites the relevant facts as alleged by

ECMC.

ECMC alleges that Alia's loan was originally guaranteed by CSAC and

serviced by Navient. In November 2010, the DOE assigned the CSAC loan portfolio

to ECMC, at which point ECMC became the new guaranty agency for Alia's loan.

Alia made 171 monthly payments, totaling $29,544.25, and then received a six-

month forbearance which expired on February 14, 2016. Alia made no payments

after the forbearance expired. When the loan became more than 270 days past due, it entered default and Navient filed a default claim. ECMC, as the guaranty agency for the loan, paid the lender the balance of the default claim: $15,325.03. Because Alia's loan has an interest rate of 8.25%, as of August 2019, the loan balance had grown to approximately $18,500.

The Estes move to dismiss all four counterclaims under Federal Rule of Civil Procedure 12(b)(6). The Estes also argue that ECMC's counterclaims are "frivolous and brought forth in bad faith as retaliation for being sued." Doc. no. 24 at 3. The court discusses ECMC's four counterclaims below.

A.  Count I: Breach of Contract

The purported contract at issue in this counterclaim is the promissory note that Alia signed in March 2001 when she applied for her federal consolidation loan. ECMC argues that when Alia signed the promissory note, she agreed to pay the loan plus interest, other applicable fees, and the cost of collecting on her debt. ECMC asserts that Alia materially breached the terms of this agreement when she failed to pay back her defaulted loan.

The Estes move to dismiss, arguing that the purported "promissory note" is only a loan application, and not a contract, because it "lacks terms of an actual agreement" such as the "interest rate, length of term, amount to be funded, total amount to be repaid and/or monthly payment amounts." Doc. no. 24 at 6. The Estes

also argue that, even if the promissory note is a contract, ECMC cannot bring its breach of contract claim because it was not a party to the promissory note.

In order to state a breach of contract claim under New Hampshire law, a plaintiff "must allege sufficient facts to show (1) that a valid, binding contract existed between the parties, and (2) that [defendant] breached the terms of the contract." Wilcox Indus. Corp. v. Hansen, 870 F. Supp. 2d 296, 311 (D.N.H. 2012). For a valid contract to exist, there must be "offer, acceptance, consideration, and a meeting of the minds." Durgin v. Pillsbury Lake Water Dist., 153 N.H. 818, 821 (2006). "A breach of contract occurs when there is a failure without legal excuse, to perform any promise which forms the whole or part of a contract." Poland v. Twomey, 156 N.H. 412, 415 (2007) (internal quotation marks omitted).

ECMC did not attach the loan application/promissory note to its answer and counterclaims; however, ECMC attached the document to its motion to dismiss plaintiffs' claims. See doc. no. 23-2. The court may consider the document at this stage of the case because ECMC's counterclaim explicitly relies upon the document and neither party disputes its authenticity. See Ironshore, 871 F.3d at 135.

"A promissory note is a contract to which basic principles of contract law apply." De Gaetano v. Lapinski, Civ. No. 08-294-B-W, 2009 WL 1032856 (D. Me. Apr. 16, 2009); see Turner v. Shared Towers VA, LLC, 167 N.H. 196, 202-03 (2014). The one-page document attached to ECMC's motion to dismiss is titled "Federal Consolidation Loan Application and Promissory Note," has a section on "Repayment

Options," has another section titled "Promissory Note" that states "THIS IS A LOAN THAT MUST BE REPAID," and ends with the signature of an "Alia G. Maxwell" on the "borrower's signature" line. Doc. no. 23-2. Accepting the facts in ECMC's counterclaim as true and construing them in the light most favorable to ECMC, the court concludes it is plausible that Alia's loan application constitutes a contract that Alia breached by failing to make loan payments.

The Estes next argue the court should dismiss ECMC's breach of contract claim because ECMC was not a party to the contract at issue. Under New Hampshire law, as a general rule, a non-party to a contract has no remedy for breach of the contract. See Sunapee Difference, LLC v. State, 164 N.H. 778, 784 (2013). ECMC acknowledges that it was not originally a party to the promissory note, but alleges that it stepped into the shoes of the original guarantor after the DOE assigned it the loan in November 2010. At this stage, ECMC has plausibly alleged it has standing to bring this claim for breach of contract. After discovery, the factual record will be clearer with regard to ECMC's relationship to the loan and the parties may revisit this issue at summary judgment. The court denies plaintiffs' motion to dismiss counterclaim I.

B. <u>Counts II and III: Quantum Meruit and Unjust Enrichment</u>[14]

ECMC alleges Alia received a benefit in the form of the loan, that ECMC paid a default claim after Alia stopped making payments on the loan, and that it would therefore be unjust if Alia did not repay ECMC.  ECMC argues it is entitled to recover the amount of its default payment  plus interest, costs, expenses and attorneys' fees under two quasi-contractual theories: quantum meruit and unjust enrichment.

"Quantum meruit is a restitutionary remedy intended for use by contracting parties who are in material breach and thus unable to sue on contract." R. J. Berke & Co., Inc. v. J.P. Griffin, Inc., 116 N.H. 760, 764 (1976) (internal quotation marks omitted). A valid claim in quantum meruit requires that: "(1) services were rendered to the defendant by the plaintiff; (2) with the knowledge and consent of the defendant; and (3) under circumstances that make it reasonable for the plaintiff to expect payment." Gen. Insulation Co. v. Eckman Constr., 159 N.H. 601, 612 (2010) (internal quotation marks omitted).

---

[14] At this point, because the parties dispute whether ECMC had a contractual relationship with the Estes, ECMC may plead breach of contract claims (Count I) and quasi-contractual claims (Counts II and III) in the alternative. <u>Cf.</u> Androscoggin Valley Reg'l Refuse Disposal Dist. v. R.H. White Constr. Co., No. 15-CV-434-LM, 2017 WL 1906612, at *5 (D.N.H. May 8, 2017) (dismissing quasi-contractual quantum meruit and unjust enrichment claim because parties acknowledged their relationship was governed by a contractual agreement); Turner, 167 N.H. at 202 (finding that equitable remedies such as unjust enrichment were not available when the parties' relationship was controlled by an express contract).  If the parties learn through discovery that the parties' relationship was contractual, then these equitable remedies may not be available. The parties may revisit this issue after discovery.

"A plaintiff is entitled to restitution for unjust enrichment if the defendant received a benefit and it would be unconscionable for the defendant to retain that benefit." Nat'l Emp't Serv. Corp. v. Olsten Staffing Serv., Inc., 145 N.H. 158, 163 (2000). "The party seeking restitution must establish not only unjust enrichment, but that the person sought to be charged had wrongfully secured a benefit or passively received one which it would be unconscionable to retain, and unjust enrichment generally does not form an independent basis for a cause of action." Gen. Insulation Co., 159 N.H. at 611 (quoting 42 C.J.S. Implied Contracts § 10, at 17 (2007)). Damages for unjust enrichment are "measured by the value of what was inequitably retained" whereas, in quantum meruit, the damages "are based on the value of the services provided by the plaintiff." Id. at 612.

Plaintiffs' motion to dismiss ECMC's counterclaims appears to be premised on their assertion that ECMC lacks a sufficient relationship to the loan to recover under either a contractual or quasi-contractual claim. However, because ECMC alleges that it paid the default claim on Alia's loan, the court concludes it is plausible that Alia received a benefit that makes her liable to ECMC under a quasi-contractual theory. The court therefore denies plaintiffs' motion to dismiss counterclaims II and III.

### C.  Count IV: New Hampshire's CPA

ECMC argues the Estes have engaged in an unfair method of competition or deceptive trade practice in violation of CPA,

RSA 358-A, by repeatedly demanding that ECMC prove that it is entitled to payment. ECMC asserts the Estes are trying to force ECMC to abandon its claim because doing so would be less expensive than the cost of defense or collection. ECMC asserts that because plaintiffs' complaint states Charles is acting on behalf of his business, OEM-Tech, this case has a sufficient nexus to commerce to support a CPA claim. The Estes move to dismiss on the grounds that this counterclaim is retaliatory and that their conduct does not violate any provision of the CPA.

The CPA provides in relevant part that "[i]t shall be unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state." RSA 358-A:2. In addition to this general proscription, the CPA sets forth a list of specific types of conduct that qualify as unfair or deceptive trade practices. See id. The CPA defines "trade" and "commerce" as including "the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situate." RSA 358–A:1, II.

The New Hampshire Supreme Court has observed that the general proscription of the CPA "is broadly worded, and not all conduct in the course of trade or commerce falls within its scope." State v. Moran, 151 N.H. 450, 452 (2004). To determine whether a commercial action that is not specifically delineated is covered by the CPA's general proscription, New Hampshire uses a "rascality test." Id. "Under the rascality test, the objectionable conduct must attain a level of

rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." Id. (internal quotation marks omitted).

Here, even assuming ECMC has plausibly alleged plaintiffs' conduct has the requisite connection to commerce, the court concludes ECMC has failed to plausibly allege that conduct constitutes an "unfair or deceptive act or practice." RSA 358-A:2. ECMC does not attempt to fit plaintiffs' conduct into any of the specific categories enumerated in the Act and none of the categories seem to apply. Although ECMC may find plaintiffs' repeated demands for information to be objectionable, "selfish bargaining and business dealings will not be enough to justify a claim for damages" under the CPA. Barrows v. Boles, 141 N.H. 382, 390 (1996). In addition, "[a]n ordinary breach of contract claim does not present an occasion for the remedies under the Consumer Protection Act." Id. ECMC has failed to plausibly allege that plaintiffs' conduct rises to the level of rascality that would "raise an eyebrow of someone inured to the rough and tumble world of commerce." Moran, 151 N.H. at 452 (internal quotation marks omitted). For these reasons, the court dismisses counterclaim IV.

## CONCLUSION

For the foregoing reasons, ECMC's motion to dismiss (doc. no. 23) is granted in part and denied in part: the motion is granted as to Count III and the portion of Count II that alleges a claim under HEA, but is otherwise denied. Plaintiffs' motion

to dismiss (doc. no. 24) is granted in part and denied in part: the motion is granted as to claim IV, but is otherwise denied.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

September 16, 2020

cc:  Counsel of Record.