UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Charles R. Estes, et al.

v. Civil No. 19-cv-822-LM
Opinion No. 2021 DNH 117 P

ECMC Group, Inc.

**O R D E R**

Pro se plaintiffs Charles R. Estes (d/b/a OEM-Tech) and Alia G. Estes ("Alia") allege that defendant Education Credit Management Corporation ("ECMC") violated federal and state laws in its attempts to collect Alia's student loan debt. Presently before the court are the parties' cross-motions for summary judgment (doc. nos. 53 and 54). Each side contends that it is entitled to judgment as a matter of law on plaintiffs' claims.[1] For the reasons stated below, ECMC's motion is granted and plaintiffs' motion is denied.

## STANDARD OF REVIEW

A movant is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of

---

[1] ECMC brings counterclaims against Alia alleging breach of contract, unjust enrichment, and quantum meruit. See doc. no. 3 at 13-15; doc. no. 34 at 26-28 (dismissing ECMC's New Hampshire Consumer Protection Act counterclaim). Neither party has moved for summary judgment on ECMC's counterclaims.

the" nonmovant. Rodríguez-Cardi v. MMM Holdings, Inc., 936 F.3d 40, 47 (1st Cir. 2019) (quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)). A fact is material if it has "the potential to affect the outcome of the suit under the applicable law." Id. at 46 (quoting Cherkaoui v. City of Quincy, 877 F.3d 14, 23 (1st Cir. 2017)). All facts and reasonable inferences are viewed in the light most favorable to the nonmovant. Kelly v. Corr. Med. Servs., Inc., 707 F.3d 108, 115 (1st Cir. 2013). This same standard applies when, as here, the parties file cross-motions for summary judgment. Adria Int'l Grp., Inc. v. Ferré Dev. Inc., 241 F.3d 103, 107 (1st Cir. 2001).

## ECMC'S MOTION FOR SUMMARY JUDGMENT

ECMC's motion is accompanied by a statement of material facts supported by record citations. See L.R. 56.1. Plaintiffs' objection to ECMC's motion primarily takes aim at the facts set forth in ECMC's factual statement. To provide the reader with pertinent background information, the court will first summarize the relevant facts as set forth by ECMC, provide a brief overview of this case's procedural history, and then address plaintiffs' factual challenges. Finally, the court will address ECMC's arguments in support of its motion.

### I. ECMC's Statement of Material Facts

On March 20, 2001, Alia signed a Federal Consolidation Loan Application and Promissory Note ("Application and Note") as part of the Federal Family

Educational Loan Program ("FFELP" or "FFEL program"). The Application and Note listed three loans to be consolidated: (1) a "US"[2] loan in the amount of $2,000; (2) another "US" loan in the amount of $19,000, and (3) a "PERK" loan in the amount of $1,300. Section F of the Application and Note is entitled "Promissory Note." That section contains a paragraph entitled "Promise to Pay" describing the obligations of the loan's recipient to repay the loan. The paragraph also states that "the amount of the loan will be based on the payoff balance(s) of such loan(s) selected for consolidation as provided by the holder(s) of such loan(s) and may exceed [the applicant's] estimate of such payoff balance(s)." At the conclusion of the paragraph, which is just above where Alia's signature appears, the following text appears in all-capitals: "THIS IS A LOAN THAT MUST BE REPAID." The Application and Note further states that, "[a]t or about the time my former loans are discharged, a disclosure statement and repayment schedule . . . will be issued to me identifying the amount of the Federal Consolidation Loan and additional terms of the loan."

On April 20, 2001, Alia signed a "Repayment Schedule and Disclosure" dated April 12, 2001. The Repayment Schedule and Disclosure states that "[t]his document is the repayment schedule which is provided for in the promissory note(s) you signed." It also states that the "Holder of the Loan(s)" is "The Student Loan Corp – Citibank," that the "Annual Percentage Rate (APR) is 8.250," and that the

[2] The Application and Note instructs the applicant to "[u]se the Loan Types listed in the instructions" when filling out the Application. Neither party has provided the court with the instructions referenced in the Application and Note.

"Repayment Period Start Date" is April 12, 2001. Under the heading "Loans Covered By This Document" is a five-column, two-row table, which reads as follows:

| LOAN DATE | ORIGINAL LOAN AMOUNT | OUTSANDING PRINCIPAL BALANCE | GUARANTOR | LOAN TYPE |
|---|---|---|---|---|
| 4/12/01 | 21,378 | 21,378 | CA | CONS |
| 4/12/01 | 1,258 | 1,258 | CA | CONS |
| TOTAL: | 22,636 | 22,636 | | |

Alia's Federal Consolidation Loan was distributed on or about April 12, 2001. The original guarantor of the loan was an entity known as the California Student Aid Commission ("CSAC").[3] CSAC was a state agency and was the designated guaranty agency for the State of California. ECMC is also a guaranty agency. ECMC has entered into an agreement with the U.S. Department of Education, pursuant to which ECMC functions as a guaranty agency participating in the FFEL program administered and regulated by the Department under the Higher Education Act of 1965 ("HEA"). See 34 C.F.R. § 682.400.

On November 1, 2010, CSAC executed a blanket assignment to ECMC of CSAC's entire portfolio of guaranteed and non-defaulted loans. As of that date, ECMC assumed all responsibilities as the designated guaranty agency for the State of California. Also as of that date, ECMC became the guarantor of Alia's March 20,

[3] Alia was a California resident at the time she signed the Application and Note.

2001, Application and Note and of the loans distributed under the April 12, 2001, Repayment Schedule and Disclosure.

The National Student Loan Data System ("NSLDS') is the Department of Education's database for student aid. NSLDS receives data from schools, guaranty agencies, and other Department of Education programs; it provides a centralized location for users to search for information about student loans. As of July 9, 2019, Alia's Loan History in NSLDS showed a total of fourteen student loans. The most recent loan appearing on her loan history is a "CL-FFEL CONSOLIDATED" loan with a "Loan Date" of "4/12/2001" and a loan amount of $22,636. On the "Loan Detail" page associated with this loan, the interest rate is "8.250% FIXED," and the original lender is listed as "CITIBANK (NEW YORK STATE) SLC."

According to the Department of Education's instructions for providers of data to NSLDS, NSLDS uses numeric codes to describe various conditions attached to loans and events associated with loans. This allows the Department to save space in the database and simplifies data processing by describing what can be a whole series of events in just a few numeric or alphabetical characters. The Department's table of "Guaranty Agency Codes" shows that CSAC has an NSLDS code of 706, and that ECMC's code is 951. The National Council of Higher Education Resources ("NCHER")—the nation's largest higher education finance trade association—confirms that that the FFELP guarantor code assigned to CSAC is 706 and that the FFELP guarantor code assigned to ECMC is 951.

NSLDS shows that, from April 12, 2001 through September 29, 2012, the guaranty agency for Alia's Federal Consolidation Loan with a loan date of 4/12/2001 was "ECMC-CA."  However, the guaranty agency code listed alongside this guarantor is 706, which is CSAC's code.  NSLDS also shows that, beginning September 30, 2012, the guaranty agency for Alia's loan was "Educational Credit Management Corp" with a guaranty agency code of 951.

In a notice dated July 19, 2011, Sallie Mae notified Alia that it was the new servicer of Alia's loan.  Specifically, the notice stated that Sallie Mae was now the servicer for Alia's loan bearing a "Loan Date" of "4/12/01," an "Original Loan Amount" of $21,378.10, and an interest rate of "8.250."  In a subsequent notice, Sallie Mae informed Alia that Sallie Mae had become "two separate and distinct companies—Sallie Mae and Navient," and that Navient would be the servicer of Alia's loan going forward.

Alia failed to make monthly payments toward her loan's principal balance or accrued interest several times between July 2011 and January 2016.  In a notice dated January 13, 2016, ECMC informed Alia that it "is the guarantor of your federal student loan," and that ECMC's "records show that you have been past due on your federal student loan payments for more than six months."  See 34 C.F.R. § 682.200(b) (consolidation loan enters default when borrower fails to make installment payment, the failure exists for at least six months, and the "Secretary or guaranty agency finds it reasonable to conclude that the borrower . . . no longer intends to honor the obligation to repay").  The last payment credited towards Alia's

principal balance or accrued interest on her account with Navient had an effective date of April 22, 2016. NSLDS shows that the loan entered default status on July 6, 2017.

On or about that date, Navient notified ECMC that Alia had defaulted on her loan and demanded, on behalf of the note's holder, that ECMC make payment as the guarantor. ECMC paid the default claim—a total of $14,789.29. See 34 C.F.R. § 682.102(g) ("If a borrower defaults on a loan, the guarantor reimburses the lender for the amount of its loss. The guarantor then collects the amount owed from the borrower."). The lender then assigned Alia's note to ECMC. ECMC capitalized the interest that had accrued on Alia's loan at the time of default and added collections costs to Alia's debt. See 20 U.S.C. § 1091a(b)(1) (requiring borrowers who default on FFELP loans to pay reasonable collection costs); 34 C.F.R. § 682.410(b)(2) (setting forth methods for determining collections costs), § 682.410(b)(4) (requiring the capitalization of outstanding interest at the time of default).

ECMC sent Alia a Notice of Default on July 10, 2017. The Notice informed Alia that ECMC, as her guarantor, had been required to pay a default claim to Alia's lender. ECMC then certified Alia for a tax refund offset and, in a subsequent notice dated August 25, 2018, ECMC informed Alia that the Department of Education planned to offset plaintiffs' federal income tax refund to partially satisfy her obligation. See 34 C.F.R. § 682.410(b)(6)(v) ("A guaranty agency must attempt an annual Federal offset against all eligible borrowers."). The plaintiffs' tax refund was then seized.

## II. Procedural History

Plaintiffs thereafter instituted this action in New Hampshire state court, asserting federal- and state-law claims against ECMC related to its attempts to collect Alia's student loan debt. ECMC removed the case to this court, citing federal question and supplemental jurisdiction. ECMC then counterclaimed, alleging breach of contract as well as claims sounding in quasi-contract. The parties filed cross-motions to dismiss. The court granted in part and denied in part each motion.

Following the court's order on the parties' motions to dismiss, plaintiffs' remaining claims against ECMC are brought under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., and New Hampshire's Unfair, Deceptive, or Unreasonable Collection Practices Act ("UDUCPA"), RSA ch. 358-C. Plaintiffs allege that ECMC violated FDCPA and UDUCPA by adding collection costs to Alia's debt, causing the seizure of their federal income tax refund, and by reporting Alia's account to credit agencies. ECMC argues that it is entitled to judgment as a matter of law on plaintiffs' FDCPA claims because, as the loan's guarantor, it is not a "debt collector" as defined by that Act. In addition, ECMC argues that it is entitled to judgment as a matter of law on plaintiffs' UDUCPA claims because ECMC, as the loan's guarantor, was required by federal law to take the actions plaintiffs complain of; therefore, ECMC argues, to the extent that its conduct may be prohibited by a state law such as UDUCPA, the state law is preempted.

III. Discussion

The court first recounts pertinent information on FFELP as it pertains to the at-issue loan, which informs the court's consideration of plaintiffs' claims and the parties' arguments. It then addresses plaintiffs' factual challenges to ECMC's statement and determines whether any material facts set forth by ECMC are in genuine dispute. Finally, the court considers whether ECMC is entitled to judgment as a matter of law on plaintiffs' FDCPA and UDUCPA claims.

A. The Federal Family Educational Loan Program ("FFELP")

"Congress passed the Higher Education Act of 1965 . . . to 'keep the college door open to all students of ability, regardless of socioeconomic background.'" Rowe v. Educ. Credit Mgmt. Corp., 559 F.3d 1028, 1030 (9th Cir. 2009) ("Rowe I") (quoting Pelfrey v. Educ. Credit Mgmt. Corp., 71 F. Supp. 2d 1161, 1162-63 (N.D. Ala. 1999), aff'd, 208 F.3d 945 (11th Cir. 2000)) (citing 20 U.S.C. § 1070(a)). HEA established FFELP and Congress directed the Department of Education to administer it. Id. (citing 20 U.S.C. § 1071). Under that program, "eligible lenders make guaranteed loans on favorable terms," which "are typically guaranteed by guaranty agencies" in the first instance and "are ultimately reinsured by the [Department of Education]." Id. (quoting Pelfrey, 71 F. Supp. 2d at 1163).

FFELP regulations define "guaranty agency" as a "State or private nonprofit organization that has an agreement with the Secretary under which it will

administer a loan guarantee program under the [HEA]."  34 C.F.R. § 682.200.  The guaranty agency "is an intermediary between the United States and the lender of the student loan," Rowe I, 559 F.3d at 1030 (quoting Great Lakes Higher Educ. Corp. v. Cavazos, 911 F.2d 10, 15 (7th Cir. 1990)), and "administers [FFELP] at the state and local levels," Pelfrey, 71 F. Supp. 2d at 1163.  A guaranty agency's "primary function," however, "is to issue guaranties to lenders."  Id.

When a borrower defaults on an FFELP loan and the lender is unable to obtain repayment despite complying with regulatory "due diligence" requirements, the lender files a claim with the guaranty agency.  Rowe I, 559 F.3d at 1030 (citing 34 C.F.R. §§ 682.411, .412(e)(2)).  "The guaranty agency acts as a guarantor, paying the lender the unpaid balance of the defaulted loan.  The guaranty agency is then assigned the loan by the lender."  Id. (citing 34 C.F.R. § 682.410(b)(5)(vi)(A)).

"Depending on the precise agreement between a guaranty agency and the [Department of Education], the agency can recover from the [Department] 80 to 100% of its losses resulting from a defaulted loan, provided that the guaranty agency engages in 'due diligence' in seeking to recover on the defaulted loan."  Id. (citing 20 U.S.C. § 1078(c) and 34 C.F.R. § 682.410); see also 34 C.F.R. § 682.410(b)(6)(i) ("A guaranty agency must engage in reasonable and documented collection activities on a loan on which it pays a default claim filed by a lender.").  Among other things, the guaranty agency must report the default to credit agencies and annually attempt to offset defaulted borrowers' federal income tax refunds.  See

34 C.F.R. § 682.410(b)(5)-(6).  Guaranty agencies must also charge defaulted

borrowers reasonable collection costs.  See 20 U.S.C. § 1091a(b)(1).


      B.      Plaintiffs' Challenges to ECMC's Status as the Loan's Guarantor

ECMC's arguments for summary judgment are dependent upon its assertion

that it is or was the guarantor of Alia's Federal Consolidation Loan.  Plaintiffs raise

a host of challenges to ECMC's assertion.  Their challenges can be grouped into

three general categories: (1) challenges to the document ECMC claims to be the

promissory note underlying Alia's loan; (2) challenges to ECMC's claim that CSAC

was the loan's original guarantor; and (3) challenges to ECMC's claim that it paid

the default claim demanded by Navient and took assignment of Alia's loan.  The

court considers plaintiffs' challenges by category below.


      1.      The Application and Note

Plaintiffs point out that ECMC cannot prove it is the guarantor unless ECMC

produces evidence that Alia executed a promissory note.  After all, if ECMC cannot

prove that Alia executed a loan, ECMC cannot prove it was the guarantor of that

loan.  In support of ECMC's motion for summary judgment, ECMC submitted an

affidavit prepared by Colleen Russell, a litigation specialist with one of ECMC's

subsidiaries.  See doc. no. 53-3.  In her affidavit, Russell purports to authenticate

numerous documents, including copies of the Application and Note, the document

ECMC claims to be the application and promissory note for Alia's 2001 Federal

Consolidation Loan.  Russell states that ECMC obtained the Application and Note from Navient, the company that previously serviced Alia's loan.  Plaintiffs claim that, to the extent Russell has any knowledge of this document, that knowledge is based only on what others—namely, Navient—have told her.  Therefore, plaintiffs contend, Russell cannot authenticate this document.  See Fed. R. Civ. P. 56(c)(2), (4).  ECMC responds that Russell's affidavit lays a sufficient foundation for admission of the document under Federal Rule of Evidence 803(6).

The rule against hearsay bars the admission of out-of-court statements offered to prove the truth of the matter asserted.  Fed. Rs. Evid. 801, 802.  There are numerous exceptions to this rule, however, including the business records exception.  See Fed. R. Evid. 803(6).  Under that exception, a record may be admitted for the truth of its contents if: (A) the record was made by "someone with knowledge" of its contents; (B) the record "was kept in the course of a regularly conducted activity" of a business or organization; (C) it was that organization's "regular practice" to make the record; (D) these first three requirements "are shown by the testimony of the [organization's] custodian or another qualified witness"; and (E) the opponent fails to show "that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness."  Fed. R. Evid. 803(6)(A)-(E).

Russell's affidavit establishes requirements A through D.  Russell states that, pursuant to her responsibilities as a litigation specialist with ECMC, she has "direct custody and control" of Alia's account with ECMC.  Doc. no. 53-3 ¶ 7.  She is

"familiar with the documents and records contained" in Alia's account. Id. ¶ 10. One of those documents is a "Federal Family Education Loan Program (FFELP) Federal Consolidation Loan Application and Promissory Note" signed by "Alia G. Maxwell"[4] and dated March 20, 2001. Id. ¶¶ 3, 12; see doc. nos. 53-5 and 53-6 (copies of Application and Note). Russell states that ECMC obtained this document from Navient, Alia's prior loan servicer. See doc. no. 53-3 ¶ 3. Russell avers that ECMC kept the Application and Note during its regularly conducted business activities and that it was created at or near the time Alia executed her Federal Consolidation Loan. See id. ¶ 9.

Plaintiffs strenuously object to the reliability of the Application and Note. Given that ECMC admits it had no role in the document's creation but rather obtained it from Navient after the fact, plaintiffs argue that Russell cannot sufficiently demonstrate that Application and Note "is in fact the application resulting in loans to Alia." However, "there is no categorical rule barring the admission of integrated business records under Rule 803(6) based only on the testimony from a representative of a successor business." U.S. Bank Tr., N.A. ex rel. LSF9 Master Participation Tr. v. Jones, 925 F.3d 534, 537 (1st Cir. 2019). A third-party's business record is admissible "where the party that produced the business records 'relied on the third-party document and documents such as those in his business.'" Id. (brackets omitted) (quoting United States v. Doe, 960 F.2d 221, 223 (1st Cir. 1992)); see also Brawner v. Allstate Indem. Co., 591 F.3d 984, 987

[4] Alia's maiden name was Maxwell.

(8th Cir. 2010) ("Several . . . courts have held that a record created by a third party and integrated into another entity's records is admissible as the record of the custodian entity, so long as the custodian entity relied upon the accuracy of the record and the other requirements of Rule 803(6) are satisfied.").  Conversely, third-party business records may be inadmissible where the later business "lacked a 'self-interest in assuring the accuracy of the outside information.'"  Jones, 925 F.3d at 538 (quoting United States v. Vigneau, 187 F.3d 70, 77 & n.6 (1st Cir. 1999)).  The admissibility of third-party business records ultimately "turns on the facts of each case"; "[t]he key question is whether the records in question are 'reliable enough to be admissible.'"  Id. at 537-38 (quoting FTC v. Direct Marketing Concepts, Inc., 624 F.3d 1, 16 n.15 (1st Cir. 2010)); see also, e.g., Kuntz v. Educ. Credit Mgmt. Corp., Case No. 1:18-cv-31, 2020 WL 1872332, at *5-6 (D.N.D. Jan. 7, 2020) (affidavit from ECMC litigation specialist laid proper foundation for admission of records obtained from loan originator and original guarantor under Rule 803(6)).

The Application and Note is sufficiently reliable to be admissible.  ECMC obtained this document from Alia's prior servicer, Navient.  Plaintiffs do not dispute that Navient was the loan's servicer.  Nor have they posited any plausible reason why Navient would not have in its possession the originating loan document for Alia's Federal Consolidation Loan.  Moreover, ECMC has acted in reliance on the authenticity of the Application and Note and on other, similar documents.  ECMC made a payment to Navient of almost $15,000 based on its status as the guarantor of Alia's Federal Consolidation Loan and has vigorously defended its status as the

guarantor of the promise to repay contained in the Application and Note. See Jones, 925 F.3d at 538 (affirming admission of third-party business records where the party offering the record "placed its own financial interest at stake by relying on those records" (brackets and quotation omitted)). And, given that ECMC became the designated guaranty agency for the State of California after taking assignment of CSAC's portfolio of guaranteed loans, it cannot reasonably be questioned that ECMC routinely relies on promissory notes obtained from prior guarantors, servicers, and lenders. See id. at 537-38. Thus, Russell is a qualified witness who can satisfy the requirements of Rule 803(6)(A)-(C)[5] and plaintiffs have failed to demonstrate that the Application and Note is unreliable within the meaning of Rule 803(6)(E).

Plaintiffs appear to further contend that, even if the Application and Note is sufficiently reliable to be admissible, there is a genuine dispute regarding its authenticity and that this dispute precludes summary judgment. They argue that, because Russell had no involvement in the generation of Alia's loan but Alia did, Alia's "declaration of personal knowledge and experience from the period" creates a

[5] To the extent plaintiffs intend to challenge Russell's status as a "qualified witness" under Rule 803(6)(D), "a qualified witness need not be the person who actually prepared the record. Rather, a qualified witness is simply one who can explain and be cross-examined concerning the manner in which the records are made and kept." Jones, 925 F.3d at 538 (quotations and citation omitted). Russell's affidavit demonstrates that she can explain the manner in which ECMC kept the records at issue; she is a qualified witness.

genuine dispute of material fact. In effect, plaintiffs argue that Alia's denial of the Application and Note's authenticity creates a genuine dispute as to its authenticity.

Plaintiffs' argument is problematic for multiple reasons. First, plaintiffs point to no record evidence in support of this contention and they have not submitted an affidavit from Alia alongside their objection to ECMC's motion or alongside their own motion.[6] See Fed. R. Civ. P. 56(c)(1) (party asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record" or by "showing that the materials cited to do not establish the absence . . . of a genuine dispute"); Magee v. United States, 121 F.3d 1, 3 (1st Cir. 1997) (party opposing summary judgment cannot "rely on conclusory allegations or unsubstantiated denials, but must identify specific facts derived from the pleadings, depositions, answers to interrogatories, admissions, and affidavits to demonstrate either the existence or absence of an issue of fact"). "[M]ere allegations" of fact confined exclusively to a motion or pleading "are not entitled to weight in the summary judgment calculus." Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 3 (1st Cir. 2010).

Second, and more fundamentally, Alia's mere denial of the Application and Note's authenticity—even if presented in a proper evidentiary format—is

[6] Although plaintiffs claim that Alia submitted responses to ECMC's requests for admissions denying the authenticity of the Application and Note, they have not provided the court with those responses.

insufficient to create a genuine dispute.  See, e.g., Vanderhoop v. Wilmington Savings Funds Soc. FSB, Civ. Action No. 18-11924-FDS, 2019 WL 3082544, at *4 (D. Mass. July 15, 2019).  The goal of summary judgment "is not to replace conclusory allegations of the complaint . . . with conclusory allegations of an affidavit."  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990).  Rather, "the party opposing summary judgment on the ground that there are disputed facts must present substantial evidence in opposition to a motion for summary judgment."  11 James Wm. Moore, Moore's Federal Practice – Civil § 56.41[1][b] (3d ed.); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-52 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  "[T]he mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment."  Sullivan v. Neiman Marcus Grp., 358 F.3d 110, 114 (1st Cir. 2004) (quoting Torres v. E.I. Dupont De Nemours & Co., 219 F.3d 13, 18 (1st Cir. 2000)); see also Rodríguez-Cardi, 936 F.3d at 47 (explaining that a factual dispute is genuine if the evidence about the fact is such that the dispute can be resolved in favor of either party).

Plaintiffs do not dispute that Alia applied for a Federal Consolidation Loan in March 2001.  They do not contest that the loans listed on the Application and Note for consolidation were Alia's loans.  They do not dispute that the Application and Note bears Alia's signature.  They have not produced any document that they contend to be the true loan application or promissory note.  Without more, Alia's

conclusory statement that the Application and Note is not the originating loan document fails to create a genuine dispute on that issue.[7]

Plaintiffs insist that there is evidence separate and apart from Alia's denial showing the Application and Note's inauthenticity.  For example, plaintiffs state in their objection that Alia was told by the person who supplied her with a Federal Consolidation Loan application that the loan application and promissory note were to be separate documents whereas the Application and Note presented by ECMC is a single document.  However, there is no evidence in the record that this out-of-court statement from an unidentified declarant was actually made.  And, even if there was such evidence, plaintiffs fail to show how evidence of the statement would be admissible despite the rule against hearsay.

In a similar vein, plaintiffs note that the Repayment Schedule and Disclosure—a document produced by ECMC (see doc. no. 53-7) whose authenticity plaintiffs do not contest—shows a different loan amount and different loan type

---

[7] ECMC has produced two copies of the Application and Note.  See doc. nos. 53-5 and 53-6.  The first copy contains only a single page and the second copy contains two pages.  The first page of each document is identical, though doc. no. 53-6 has a higher resolution than doc. no. 53-5.  Each document states in Section F, entitled "Promissory Note," that "[m]y signature certifies I have read, understand, and agree to the terms and conditions of this Note, including the Borrower Certifications and Authorizations."  Doc. no. 53-5; accord doc. no. 53-6.  The second page of doc. no. 53-6 is entitled "Promissory Note (continued)" and contains a "Borrower Certification and Authorization."  Doc. no. 53-6.

As with the Application and Note itself, plaintiffs claim that ECMC pulled page 2 of doc. no. 53-6 "out of thin air" and that the originating loan document Alia signed in 2001 did not contain a second page.  For reasons similar to those outlined above, plaintiffs' argument fails to create a genuine dispute.  In light of ECMC's factual showing, plaintiffs' mere assertion in a pleading, without evidentiary support, is insufficient to create a triable factual issue on this point.

than the Application and Note.  Thus, plaintiffs contend, the only reasonable conclusion is that the Application and Note is not the true promissory note.  The court disagrees.  The loan type on the repayment schedule is abbreviated as "CONS."  This is consistent with the Application and Note, which was for a Federal Consolidation Loan.  Moreover, the Application and Note states in Section F that the ultimate amount of the loan may exceed the estimate provided by the applicant on the Application and Note because the holder will include unpaid principal, interest, collection costs, and other costs as permitted by federal regulations.  See doc. nos. 53-5 and 53-6.  And the discrepancy between the total monetary amount of loans to be consolidated on the Application and Note and the loans listed on the Repayment Schedule and Disclosure is only $336.  Especially considering Section F's explicit cautioning that the total amount of the loan may differ from the amount represented on the Application and Note, this discrepancy is insubstantial and fails to create a genuine dispute as to whether the Application and Note is the loan's originating document.

Plaintiffs also contend that the Application and Note cannot be the originating loan document because, in 1998, the Acting Chief Operating Officer of the Office of Student Financial Programs (an office within the Department of Education) circulated a "Dear Colleague" letter stating that a "Master Promissory Note" form will be the only approved promissory note for FFELP Stafford Loans beginning with the 2000-2001 academic year.  Because the Application and Note is not on the prescribed Master Promissory Note form, plaintiffs contend that a

reasonable trier of fact could conclude that the Application and Note is not the loan's originating document. However, it is undisputed that Alia's loan was a Federal Consolidation Loan, not a Stafford Loan. Thus, the "Dear Colleague" letter fails to suggest that the Application and Note is anything other than the originating loan document.

For all of these reasons, plaintiffs have failed to identify evidence creating a genuine dispute as to whether the Application and Note produced by ECMC is the loan application and promissory note underlying Alia's Federal Consolidation Loan.

2. CSAC as the Original Guarantor

The next category of arguments raised in plaintiffs' objection is addressed to ECMC's claim that CSAC was the original guarantor of Alia's loan. ECMC states that CSAC was the loan's original guarantor and that ECMC became the loan's guarantor when it took over CSAC's guarantee portfolio in 2010. Plaintiffs mount several challenges to ECMC's factual contention that CSAC was the loan's original guarantor.

Plaintiffs highlight that ECMC has attempted to demonstrate the absence of a genuine dispute that CSAC was the original guarantor in part through reliance on NSLDS. As previously noted, NSLDS shows that the current guaranty agency for Alia's Federal Consolidation Loan dated April 12, 2001, is "Educational Credit Management Corp – 951." Doc. no. 53-8 at 2-3. ECMC's guaranty agency code in NSLDS is 951. NSLDS also shows that the loan's original guarantor was "ECMC-

CA," which is listed alongside CSAC's guaranty code of "706," doc. no. 53-9 at 3. Plaintiffs assert that ECMC falsified data in NSLDS to represent that "ECMC-CA," (i.e., CSAC) was the loan's original guarantor.  For example, plaintiffs contend that ECMC's falsification is evidenced by the fact that NSLDS shows that the loan's information was "Last Updated" on July 8, 2019—the same day plaintiffs filed this complaint in state court.  Doc. no. 53-9 at 2.

Plaintiffs' contentions are speculative and are unsupported by evidence, substantial or otherwise.  Evidence that loan information was updated in July 2019 is not tantamount to evidence that loan information was falsified in July 2019. Although plaintiffs protest that ECMC's own summary judgment materials show that an ECMC employee altered NSLDS the day plaintiffs filed their complaint, a close review of these materials shows, at most, that an ECMC employee accessed NSLDS on that date.  See doc. no. 53-8 at 2; doc. no. 53-9 at 2.  The court sees nothing suspicious about the fact that an ECMC employee accessed the loan's information on NSLDS the same day that it received notice of a lawsuit involving that loan.

Plaintiffs also argue that the Application and Note contradicts ECMC's claim that CSAC was the loan's original guarantor.  The Application and Note contains a box titled "Guarantor, Lender, or Program Identification."  Doc. no. 53-6 at 2.  In this box, an entity called "Collegiate Funding Services, LLC," ("CFS") is listed.  Id. Plaintiffs state that, according to the Application and Note, CFS was the loan's guarantor, not CSAC.  Plaintiffs are incorrect.  The relevant box in the Application

and Note is phrased in the disjunctive. The box indicates that CFS was the loan's guarantor, or its lender, or its program identification. In other words, the Application and Note is consistent with the corpus of the summary judgment record—and that record discloses the absence of any genuine dispute that CSAC was the loan's original guarantor.

Plaintiffs also argue that the Repayment Schedule and Disclosure Alia signed in April 2001 states that the loan's guarantor is "CA," not CSAC. Doc. no. 53-7. However, as with plaintiffs' challenge to the Application and Note, this notation is consistent with ECMC's claim that CSAC was the loan's original guarantor. ECMC has produced evidence that CSAC—a California state agency—was the designated FFELP guaranty agency for the State of California until 2010.[8] See doc. no. 53-13. Stating that California was the loan's guarantor is but another way of stating that a California agency was the loan's guarantor.

Plaintiffs further argue that the NSLDS code for CSAC is "706," not "CA." Because the Repayment Schedule and Disclosure does not use the NSLDS code associated with CSAC, plaintiffs argue, it shows that an entity other than CSAC was the loan's guarantor. The problem with this argument is that the Repayment Schedule and Disclosure is not an NSLDS document. The fact that the Department of Education codes CSAC using something other than "CA" is not relevant, absent

[8] Plaintiffs assert that there were five FFELP guaranty agencies in California in 2001. This assertion is unsupported by citation to any evidence in the record. And, from the court's independent review of the summary judgment record, there is no support in the record for this assertion.

evidence that the lender that issued the Repayment Schedule and Disclosure used the same coding system.[9]

Plaintiffs argue that a genuine dispute of material fact exists as to whether NSLDS shows that CSAC was the loan's original guarantor because NSLDS contains other inaccuracies. For example, NSLDS shows that ECMC became Alia's guarantor in 2012, which contradicts ECMC's claim that CSAC assigned Alia's guaranty in 2010. The court has reviewed the NSLDS evidence. To the extent this evidence contains inaccuracies, they are immaterial. Whether ECMC became the guarantor in 2010 or 2012, both dates are well before ECMC states it paid the lender's default claim. The accuracy of immaterial details contained in NSLDS fails to show a genuine dispute that NSLDS inaccurately reports CSAC to be the loan's original guarantor.

Plaintiffs next argue that there is a genuine dispute as to whether ECMC was ever the guarantor of Alia's loan because an unnamed Navient employee told plaintiffs in January 2016 that ECMC did not appear anywhere on Alia's account. This argument is not supported by any record evidence. But even if the record contained a sworn statement that this conversation occurred, plaintiffs fail to show how they could produce evidence of this out-of-court statement in a form that would be admissible at trial. See Perez v. Volvo Car Corp., 247 F.3d 303, 316 (1st Cir. 2001) ("Affidavits purporting to describe meetings or conversations need not spell

[9] For the same reason, plaintiffs' argument that one of Navient's internal record-keeping documents listed the guarantor as "CA" is immaterial.

out every detail, but . . . [s]tatements predicated upon undefined discussions with unnamed persons at unspecified times are simply too amorphous to satisfy the requirements of Rule 56(e), even when proffered in affidavit form by one who claims to have been a participant."); Moore, supra § 56.91[2] (party need not offer evidence in an admissible form at summary judgment, but must show "that it will be possible to put . . . the substance or content of the evidence . . . into an admissible form"); see also doc. no. 62-1 (deposition of plaintiff Charles Estes stating that he did not attempt to obtain evidence from Navient that this discussion occurred).[10]

Finally, plaintiffs point to a letter Sallie Mae sent Alia in 2011 informing her that it was her new loan servicer. See doc. no. 53-15. The letter states that the "Loan Program" associated with Alia's April 12, 2001, loan is "SM." According to plaintiffs, a reasonable trier of fact could infer from this letter that Sallie Mae was the loan's guarantor, not CSAC or ECMC. The court does not agree. Assuming this letter is admissible, plaintiffs conflate the servicer of a loan with the guarantor of a

[10] Plaintiffs ask the court not to consider their deposition transcripts in evaluating ECMC's motion for summary judgment. Plaintiffs contend that, although discovery was due to close on December 7, 2020, ECMC did not take plaintiffs' depositions until December 3 and 4. And, although motions for summary judgment were due on December 31, plaintiffs state that the transcripts of their depositions were not delivered to them until December 22 and 28, respectively. The court declines plaintiffs' request to exclude transcripts of their depositions. ECMC took plaintiffs depositions within the time limits set by this court. The court discerns no prejudice from the foregoing timeline, but to the extent plaintiffs believed the timing of their depositions required a continuance of the summary judgment deadline, they could have requested such a continuance. Cf. Johnson v. H.K. Webster, Inc., 775 F.2d 1, 8 (1st Cir. 1985) (noting that courts are skeptical of requests to exclude late-disclosed evidence on grounds of prejudice where party seeking exclusion does not first seek a continuance to attempt to counter any prejudice).

loan. The letter clearly states that "Sallie Mae is . . . your new servicer" and that Alia's student loan "was previously serviced by Citibank" and "has been transferred to Sallie Mae." Id. Moreover, there is nothing in the record suggesting that a "Loan Program," as defined by Sallie Mae, is the same thing as a guarantor; the letter does not make clear what a "Loan Program" is.

For the foregoing reasons, plaintiffs have failed to demonstrate a genuine dispute on the issue of whether CSAC was the loan's original guarantor.

3. Default and Assignment

ECMC asserts that, as the loan's guarantor, it was required to take the complained-of actions after Alia defaulted and ECMC took assignment of her note. Plaintiffs' final category of factual challenges is addressed to whether Alia actually defaulted on her loan and on whether ECMC took assignment of her note.

Plaintiffs assert that Alia's loan was never in default; rather, Navient agreed to write off the loan. In support, plaintiffs cite to Navient's payment history for Alia's account. See doc. no. 54-1 at 1-6. However, this payment history shows only that, on the same day Navient received default claim payments of almost $15,000, Navient wrote off approximately $700 worth of charges on Alia's account. This document fails to demonstrate that Alia's loan never entered default status; if anything, the loan history indicates that Alia had defaulted by the time ECMC paid the default claim in July 2017. The last payment toward Alia's principal or interest

on the payment history is dated April 22, 2016.  See 34 C.F.R. § 682.200(b) (defining default).

Plaintiffs assert that ECMC has not produced evidence that ECMC paid a default claim.  Plaintiffs are incorrect.  See doc. nos. 53-19 (Navient principal payment balance history showing that claim payments totaling approximately $15,000 were made on July 6, 2017), 53-22 (letter from ECMC to Alia stating that ECMC paid default claim of approximately $15,000), 53-9 (NSLDS showing that ECMC was guarantor at time of default).

Finally, plaintiffs argue that ECMC did not take assignment of Alia's promissory note because ECMC sent plaintiffs a notice of tax offset stating that the Department of Education held a claim against Alia that it intended to satisfy by seizing her tax refund.  However, given that guaranty agencies are intermediaries between the Department of Education (which reinsures every FFELP loan and which is the guarantor of last resort for each loan) and the lender, stating that the Department holds a claim against Alia is consistent with ECMC's status as the guarantor and as the assignee of the note.  See 34 C.F.R. § 682.406(a) (describing conditions under which guaranty agency can obtain reimbursement for default claim payments from Federal government).

For these reasons, plaintiffs fail to demonstrate a genuine dispute as to whether Alia defaulted on her Federal Consolidation Loan and as to whether ECMC took assignment of Alia's note upon her default.

4. Summary

Having resolved plaintiffs' challenges, the court concludes that, even when viewing the facts in the light most favorable to plaintiffs, there is no genuine dispute that: (a) ECMC was the guarantor of Alia's Federal Consolidation Loan no later than 2012; (b) Alia defaulted on that loan no later than July 2017; and (c) ECMC paid the lender's default claim and took assignment of the note that same month. Against this factual backdrop, the court now addresses ECMC's argument that it is entitled to judgment as a matter of law on plaintiffs' FDCPA claims.

C. The Fair Debt Collection Practices Act ("FDCPA")

Congress enacted FDCPA "to eliminate abusive debt collection practices" by "debt collectors." 15 U.S.C. § 1692(e). For example, under FDCPA, a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, and a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt," 15 U.S.C. § 1692f. To recover under FDCPA, the plaintiffs must show that: "(1) they have been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a 'debt collector' under the Act; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the Act." Moore v. Mortg. Elec. Registration Sys., Inc., 848 F. Supp. 2d 107, 124 (D.N.H. 2012) (quotation and brackets omitted).

FDCPA defines "debt collector" as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6). FDCPA specifically exempts from this definition "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . is incidental to a bona fide fiduciary obligation." Id.

ECMC argues that it does not meet the definition of a "debt collector" under the FDCPA. In the alternative, ECMC argues that it is exempted from that definition because its collection activities are incidental to its fiduciary obligation to the Department of Education. The court addresses these contentions in turn.

1. ECMC Does Not Meet the Definition of a "Debt Collector" Under FDCPA

15 U.S.C. § 1692a(6) sets forth two ways to satisfy the definition of a debt collector. See Henson v. Santander Consumer USA Inc., 137 S. Ct. 1718, 1721 (2017); Cadiz v. Educ. Credit Mgmt. Corp., Case No. 17-cv-06362, 2019 WL 4254484, at *2 (N.D. Ill. Feb. 21, 2019). First, any person who uses an instrumentality of interstate commerce or the mails in a business having a "principal purpose" of debt collection is a debt collector. 15 U.S.C. § 1692a(6). Second, any person who regularly attempts to collect debts owed or claimed to be owed to another person is a debt collector. See id.

Regarding the first definition, courts have held that the principal purpose of a guaranty agency is to guarantee loans made by other entities.  See, e.g., Rowe I, 559 F.3d at 1035; Pelfrey, 71 F. Supp. 2d at 1163; Skerry v. Mass. Higher Educ. Assistance Corp., 73 F. Supp. 2d 47, 55 (D. Mass. 1999).  ECMC contends that it is a guaranty agency participating in the FFELP and that its principal purpose is to guarantee loans, not to collect debts.

To determine whether ECMC is a guaranty agency, the court "look[s] for an agreement between ECMC and the [Department of Education]."  Bennett v. Premiere Credit of N. Am., LLC, 504 F. App'x 872, 877 (11th Cir. 2013) (per curiam); accord Lima v. U.S. Dep't of Educ., CIVIL NO. 15-00242 KSC, 2017 WL 2265888, at *7 (D. Haw. Apr. 25, 2017); see 34 C.F.R. § 682.200(b) (defining guaranty agency).  Here, ECMC has produced evidence that it has an agreement with the Department of Education to operate as a guaranty agency participating in the FFELP.  See doc. nos. 53-13 (agreement for transfer of CSAC guaranty portfolio to ECMC), 53-14 (agreement between ECMC and Department of Education stating that "ECMC is a guaranty agency participating in the Federal Family Education Loan (FFEL or FFELP) Program"); see also Lima, 2017 WL 2265888, at *7 (noting the "widely established" fact "that ECMC is a guaranty agency" participating in FFELP and collecting cases so holding).  Thus, "[u]nlike traditional debt buyers, . . . [ECMC] does not buy defaulted debts solely for collection purposes.  Rather, [ECMC] obtains title to defaulted student loans by operation of law through its agreement with the [Department] to act as a guaranty agency under the HEA."

Cadiz, 2019 WL 4254484, at *3; see Rowe I, 559 F.3d at 1030-31; Pelfrey, 71 F. Supp. 2d at 1163-65. After ECMC is assigned a defaulted loan, it is required by law to engage in collection activities; the fact that it must collect on defaulted student loans does not mean that collection is ECMC's principal purpose. See Cadiz, 2019 WL 4254484, at *3; 34 C.F.R. § 682.410(b). Because ECMC's principal purpose is not to collect debts, it does not qualify as a debt collector under the first prong of 15 U.S.C. § 1692a6.

Regarding the second prong of that statutory definition, the Supreme Court has held that, when an entity acquires title to a debt and then attempts to collect on that debt, it is not collecting on a debt "owed or due another." 15 U.S.C. § 1692a(6) (emphasis added); see Henson, 137 S. Ct. at 1724 (emphasizing that, under the second prong of the statutory definition, "you have to attempt to collect debts owed another before you can ever qualify as a debt collector"). ECMC states that Alia's lender assigned her loan to ECMC pursuant to ECMC's status as the loan's guarantor once ECMC paid the lender's default claim. ECMC argues that, in charging Alia collections costs, offsetting plaintiffs' tax refund, and reporting Alia's default to credit agencies, ECMC was acting on a debt Alia owed to ECMC rather than one she owed to another.

The court agrees with ECMC. To be a debt collector under the second prong of the statutory definition, one must collect debts on behalf of another. See 15 U.S.C. § 1692a(6); Henson, 137 S. Ct. at 1724. Several courts have concluded that a guaranty agency assigned a defaulted loan does not collect debt on behalf of

another.  See Cadiz, 2019 WL 4254484, at *2; Rowe v. Educ. Credit Mgmt. Corp.,
730 F. Supp. 2d 1285, 1289 (D. Or. 2010) ("Rowe II") (concluding that ECMC did not
satisfy FDCPA's definition of a debt collector because "ECMC collected from Rowe
on behalf of itself as a guarantor of the loan in default").  These courts' rulings are
consistent with the Supreme Court's clear holding in Henson.  This court therefore
joins the weight of authority and concludes that, on the facts of this case, ECMC
does not meet the second definition of a debt collector under FDCPA.


            2.    ECMC is Exempt From the Definition of a "Debt Collector"

       ECMC also argues that, even if it qualifies as a debt collector under FDCPA,
it comes within the fiduciary exemption from that definition.  See 15 U.S.C.
§ 1692a(6)(F)(i).  FDCPA specifically excludes from the definition of a debt collector
"any person collecting or attempting to collect any debt owed or due or asserted to
be owed or due another to the extent such activity . . . is incidental to a bona fide
fiduciary obligation."  Id.  To qualify for this exception, "[t]wo requirements must be
satisfied."  Rowe I, 559 F.3d at 1032.  "First, the entity must have a 'fiduciary
obligation.'  Second, the entity's collection activity must be 'incidental' to its
'fiduciary obligation.'"  Id.

       Regarding the first requirement, this court noted in ruling on the parties'
cross-motions to dismiss that guaranty agencies participating in FFELP owe a
fiduciary obligation to the Department of Education.  Estes v. ECMC Grp., Inc., Civ.
No. 19-cv-822-LM, 2020 WL 5549103, at *5 (D.N.H. Sept. 16, 2020) (citing Bennett,

504 F. App'x at 878, and Rowe I, 559 F.3d at 1034). "Every court that has addressed whether a guaranty agency owes a fiduciary obligation to the [Department of Education] has held that it does."[11] Rowe I, 559 F.3d at 1034. Furthermore, "FFELP regulations describe the relationship between a guaranty agency and the [Department of Education] as a fiduciary relationship." Cadiz, 2019 WL 4254484, at *4 (citing 34 C.F.R. §§ 682.410(a)(5), (11)(iii), .419(a). And "[t]he Secretary of Education has repeatedly stated that guaranty agencies owe a fiduciary duty" to the Department. Rowe I, 559 F.3d at 1034 (citing, inter alia, Fed. Family Educ. Loan Program, 61 Fed. Reg. 49,382, 49,382 (Sept. 19, 1996)). For these reasons, the court concludes that ECMC owes a fiduciary obligation to the Department of Education when it participates in FFELP.

Regarding the second requirement of the fiduciary exception, "[t]he 'incidental to' requirement means that the collection activity must not be 'central to' the fiduciary relationship." Rowe I, 559 F.3d at 1034. "The function of this requirement is to exclude fiduciaries whose sole or primary function is to collect a debt on behalf of an entity to whom the fiduciary obligation is owed." Id.; see, e.g., Wilson v. Draper & Goldberg, 443 F.3d 373, 377 (4th Cir. 2006) (concluding that law firm's foreclosure on piece of property was central to its fiduciary relationship with

[11] Many of these cases involved rulings specific to ECMC. See Freeman v. Great Lakes Educ. Loan Servs., No. 3:12cv331/MCR/CJK, 2013 U.S. Dist. LEXIS 75130, at *16 (N.D. Fla. Apr. 22, 2013) (noting the "widely accepted" proposition that ECMC, as a guaranty agency participating in FFELP, owes a fiduciary obligation to the Department of Education); Rowe II, 730 F. Supp. 2d at 1288 (same).

its client because the firm was hired solely for the purpose of conducting the foreclosure).

"Generally speaking, the collection of defaulted debts by a guaranty agency is 'incidental to' its primary function." Rowe I, 559 F.2d at 1035. The primary function of a guaranty agency participating in FFELP is to guarantee loans made by other entities. See id. This function is an important one—guaranteeing loans enables lenders to offer loans at interest rates that they otherwise may not offer. See Pelfrey, 71 F. Supp. 2d at 1163. Although guaranty agencies are required by law to take collections activities on defaulted student loans, such activities are incidental to their primary function. See Lima, 2017 WL 2265888, at *8 (agreeing with "the long line of cases that have concluded that ECMC is a guaranty agency whose actions were incidental to its fiduciary duties") (collecting cases).

Here, ECMC became the guarantor of Alia's loan no later than 2012. As of that date, ECMC's primary function with respect to Alia's loan was to guarantee her promise to repay. See Pelfrey, 71 F. Supp. 2d at 1163. Although it is undisputed that ECMC undertook to collect on Alia's loan upon her default, those undertakings were incidental to ECMC's primary function. Thus, even if ECMC qualified as a debt collector under the FDCPA definition, it is entitled to summary judgment on plaintiffs' FDCPA claims because it comes within the fiduciary exception from that definition.

3. Summary

Based on the facts not in genuine dispute, ECMC does not meet either definition of a "debt collector" set forth in FDCPA. See 15 U.S.C. § 1692a(6). Even if ECMC did meet one of those two definitions, however, ECMC falls within the fiduciary exception and is therefore exempt from FDCPA's requirements. See 15 U.S.C. § 1692a(6)(F)(i). ECMC is therefore awarded summary judgment on plaintiffs' FDCPA claims.

D. New Hampshire's Unfair, Deceptive, or Unreasonable Collection Practices Act ("UDUCPA")

UDUCPA, codified at RSA chapter 358-C, "is the 'state-law analog' to the federal FDCPA." LaCourse v. Ocwen Loan Servicing, LLC, Civil No. 14-cv-013-LM, 2015 WL 1565250, at *12 (D.N.H. Apr. 7, 2015) (quoting Moore, 848 F. Supp. 2d at 123). It allows a debtor to recover damages for "unfair, deceptive, or unreasonable" debt collection practices by a "debt collector." RSA 358-C:2; see RSA 358-C:4. ECMC argues that HEA preempts plaintiffs' UDUCPA claim.

The Supremacy Clause provides that the Constitution, federal statutes, and treaties constitute "the supreme Law of the Land." U.S. Const. art. VI, cl.2. "The Clause provides a 'rule of decision' for determining whether federal or state law applies in a particular situation." Kansas v. Garcia, 140 S. Ct. 791, 801 (2020) (quoting Armstrong v. Exceptional Child Center, Inc., 575 U.S. 320, 324 (2015)). "[W]hen federal and state law conflict, federal law prevails and state law is preempted." Murphy v. Nat'l Collegiate Athletic Ass'n, 138 S. Ct. 1461, 1476 (2018).

ECMC argues that plaintiffs' UDUCPA claim is preempted under theories of express and conflict preemption. Express preemption occurs when Congress (or an agency) enacts a statute (or a regulation) "containing an express preemption provision." Arizona v. United States, 567 U.S. 387, 399 (2012); see Capron v. Off. of Att'y Gen. of Mass., 944 F.3d 9, 21 (1st Cir. 2019). Conflict preemption occurs when state law is in actual conflict with federal law. See English v. Gen. Elec. Co., 496 U.S. 72, 79 (1990). State law is in actual conflict with federal law when "it is impossible for a private party to comply with both state and federal requirements," or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Id. (citation and quotation omitted).

With respect to express preemption, plaintiffs allege that ECMC violated UDUCPA by charging Alia collections costs, reporting her account to credit agencies, and offsetting plaintiffs' tax refund. ECMC notes that, to the extent it took these actions, they were mandated by HEA regulations pursuant to ECMC's status as the loan's guarantor. See 34 C.F.R. § 682.410(b)(2), (5)-(6). Because HEA regulations state that paragraphs (b)(2), (5), and (6) of § 682.410 "preempt any State law . . . that would conflict with or hinder satisfaction of the requirements of these provisions," ECMC argues that plaintiffs' UDUCPA claim is expressly preempted. Id. § 682.410(b)(8).

The court agrees. Fairly construed, plaintiffs' complaint alleges that ECMC violated UDUCPA by adding fees and collections costs to Alia's debt, by reporting

her account to credit agencies, and by seizing the plaintiffs' tax refund.[12] However, HEA requires guaranty agencies to do all of these things. 20 U.S.C. § 1091a(b)(1) (requiring borrowers who default on FFELP loans to pay reasonable collection costs); 34 C.F.R. § 682.410(b)(2) (implementing § 1091a(b)(1) and setting forth methods for determining reasonable collections costs); 34 C.F.R. § 682.410(b)(5) (requiring guaranty agencies to report default to consumer reporting agencies); 34 C.F.R. § 682.410(b)(6)(v) (requiring guaranty agencies to offset defaulted borrowers' federal tax refund); see also 34 C.F.R. § 682.410(b)(6)(i) ("A guaranty must engage in reasonable and documented collection activities on a loan on which it pays a default claim filed by a lender."). To the extent these actions violate UDUCPA—an issue upon which this court expresses no opinion—UDUCPA conflicts or hinders compliance with HEA and is expressly preempted pursuant to 34 C.F.R. § 682.410(b)(8). See, e.g., Hunt v. Sallie Mae, Inc., No. 11-11324, 2011 WL 2847428, at *3-4 (E.D. Mich. July 19, 2011) (plaintiffs' state law claims expressly preempted by HEA); McComas v. Fin. Collection Agencies, No. CIV. A. 2:96-0431, 1997 WL

[12] To the extent the complaint can be construed to allege that ECMC violated UDUCPA by engaging in fraudulent conduct and intentionally falsifying documents and records, ECMC has demonstrated the lack of any triable issue with respect to these contentions. There is no evidence in the record upon which a rational trier of fact could conclude that ECMC engaged in fraud. ECMC is therefore entitled to summary judgment on plaintiffs' UDUCPA claim to the extent plaintiffs premise ECMC's liability upon fraudulent conduct. See 10A Mary Kay Kane, Federal Practice & Procedure: Civil § 2727.1 (4th ed.) (explaining that, if party moving for summary judgment on an issue would not have the burden of persuasion at trial, the moving party can demonstrate entitlement to summary judgment by showing that the non-moving party's evidence fails to establish an essential element of its claim).

118417, at *2 (S.D. W. Va. Mar. 7, 1997) (concluding that state law causes of action based on conduct expressly permitted by HEA regulations are preempted); see also Martin v. Sallie Mae, Civ. Action No. 5:07-cv-00123, 2007 WL 4305607, at *8-9 (S.D. W. Va. Dec. 7, 2007) ("Several courts hold that the HEA preempts any state causes of action related to student loan claims.") (citing, inter alia, Brannan v. United Student Aid Funds, Inc., 94 F.3d 1260, 1263 (9th Cir. 1996)).

For largely similar reasons, plaintiffs' UDUCPA claim is also preempted under a theory of conflict preemption. State law is in actual conflict with federal law when it is impossible to simultaneously comply with both laws. See English, 496 U.S. at 79. Assuming without deciding that UDUCPA prohibits ECMC from engaging in the conduct plaintiffs complain of, that same conduct was required by HEA. See 20 U.S.C. § 1091a(b)(1); 34 C.F.R. § 682.410(b)(2), (5)-(6). Because it would be impossible for a guaranty agency to comply with both UDUCPA and HEA in these circumstances, UDUCPA is preempted.

In summary, plaintiffs' UDUCPA claim is preempted by HEA. ECMC is therefore entitled to summary judgment on plaintiffs' UDUCPA claim.

## IV. Conclusion

For the foregoing reasons, ECMC has demonstrated that there is no genuine dispute of material fact with respect to plaintiffs' FDCPA and UDUCPA claims and that ECMC is entitled to judgment as a matter of law on those claims. The court therefore grants ECMC's motion for summary judgment.

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs move for summary judgment on their FDCPA and UDUCPA claims. Where, as here, the party with the burden of persuasion on a claim seeks summary judgment on that claim, "the movant must produce evidence that would conclusively support its right to a judgment after trial." Moore, supra § 56.40[1][c]; accord E.E.O.C. v. Unión Independiente de la Autoridad de Acueductos y Alcantarillados de P.R., 279 F.3d 49, 55 (1st Cir. 2002). "[T]he evidence in the movant's favor must be so powerful that no reasonable jury would be free to disbelieve it." Moore, supra § 56.40[1][c]; see also Calderone v. United States, 799 F.2d 254, 258 (6th Cir. 1986) (explaining that if a summary judgment movant has the burden of persuasion, the movant's "showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party" (citation and emphasis omitted)) (cited with approval in Unión Independiente, 249 F.3d at 55).

Plaintiffs argue that they are entitled to judgment as a matter of law on their FDCPA and UDUCPA claims in part because a reasonable trier of fact would necessarily conclude that ECMC was not the guarantor of Alia's loan. Therefore, plaintiffs argue, ECMC is a debt collector under FDCPA and plaintiffs' UDUCPA claims are not preempted. In support of their contention that ECMC was not Alia's guarantor, plaintiffs advance the same factual arguments raised in objecting to ECMC's motion. For the reasons discussed in analyzing ECMC's motion, plaintiffs

have failed to demonstrate that a reasonable trier of fact would conclude that ECMC was not Alia's guarantor. To the contrary, the only reasonable inference is that ECMC was Alia's guarantor.[13] The court therefore denies plaintiffs' motion for summary judgment.

## CONCLUSION

ECMC's motion for summary judgment (doc. no. 53) is granted. Plaintiffs' motion for summary judgment (doc. no. 54) is denied. ECMC's motion in limine (doc. no. 52) is denied as moot. The only counts remaining for trial are ECMC's counterclaims for breach of contract, unjust enrichment, and quantum meruit.

SO ORDERED.

Landya McCafferty
United States District Judge

July 26, 2021

cc: Charles R. Estes, pro se
Alia G. Estes, pro se
Counsel of Record.

---

[13] Although plaintiffs raise additional arguments in their motion, those arguments are moot given this conclusion. See Fontenot v. Upjohn Co., 780 F.2d 1190, 1194 (5th Cir. 1986) (explaining that, where movant bears burden of persuasion on a claim, the movant "must establish beyond peradventure all of the essential elements of the claim") (cited with approval in Unión Independiente, 249 F.3d at 55); cf. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (explaining that failure of proof as to an essential element on a claim necessarily renders all other issues with respect to that claim immaterial).